UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| RICHARD JERRY RICE, ) | |
| ) | Civil Action No. _____ |
| Plaintiff, ) | |
| ) | |
| v. ) | **COMPLAINT** |
| ) | |
| RICHARD JAMES RICE, NANCY J. ) | **DEMAND FOR A JURY TRIAL** |
| D'ANGELICO, SCOTT A. OLSON, ) | |
| BERNADETTE W. WILCOX, and TODD ) | |
| K. TENNANT, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Plaintiff Richard Jerry Rice ("Plaintiff"), by and through his undersigned counsel, hereby brings this complaint against defendants Richard James Rice, Nancy J. D'Angelico, Scott A. Olson, Bernadette W. Wilcox, and Todd K. Tennant (collectively, "Defendants") and alleges, upon information and belief, as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff brings this action to obtain redress for years of Defendants' systematic disregard for Plaintiff's rights as a member of non-party Adcomm, LLC ("Adcomm"). Despite the fact that Plaintiff is and always has been the owner of a 20.04% interest in Adcomm, Defendants have systematically deprived him of his rights as an owner. Most egregiously and most recently, Defendants have refused to pay Plaintiff his proportionate share from the recent sale of Adcomm for approximately $17,000,000.

1

2. This is only the latest instance of self-dealing in a series of actions by the Defendants to enrich themselves at Plaintiff's expense, all in clear violation of Plaintiff's rights under the applicable contracts.

## PARTIES

3. Plaintiff Richard Jerry Rice is a natural person and a citizen of Florida. At all times relevant, Plaintiff has been a member of Adcomm with a 20.04% ownership interest in the Company.

4. Non-party Adcomm is a Virginia limited liability company with its principal place of business in Virginia.

5. Defendant Richard James Rice is a natural person who is, upon information and belief, a resident and citizen of Virginia. At all times relevant, defendant Richard James Rice has been a member of Adcomm.

6. Defendant Nancy J. D'Angelico is a natural person who is, upon information and belief, a resident and citizen of Virginia. At all times relevant, defendant Nancy J. D'Angelico has been a member of Adcomm and its registered agent.

7. Defendant Scott A. Olson is a natural person who is, upon information and belief, a resident and citizen of Virginia. At all times relevant, defendant Scott A. Olson has been a member of Adcomm.

8. Defendant Bernadette W. Wilcox is a natural person who is, upon information and belief, a resident and citizen of Virginia. At all times relevant, defendant Bernadette W. Wilcox has been a member of Adcomm.

9. Defendant Todd K. Tennant is a natural person who is, upon information and belief, a resident and citizen of Virginia. At all times relevant, defendant Todd K. Tennant has been a member of Adcomm.

## JURISDICTION AND VENUE

10. The Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) because Plaintiff is a citizen of Florida and all Defendants are citizens of Virginia, thus creating complete diversity, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

11. The Court has personal jurisdiction over Defendants because they are citizens of Virginia and because they have irrevocably submitted to the personal jurisdiction of this Court in Adcomm's Operating Agreement.

12. Venue is appropriate in this District under 28 U.S.C. § 1391(b)(1)-(2) because (i) one or more of the Defendants reside in this judicial district and all of the Defendants are residents of Virginia, and (ii) a substantial part of the events or omissions giving rise to Plaintiff's claims occurred, and a substantial part of the property that is the subject of this action is located, in this District. In addition, the Operating Agreement provides for venue in this Court for any suit involving the Operating Agreement.

## FACTUAL BACKGROUND

13. Adcomm is a limited liability company organized pursuant to the terms of the December 1, 2007 Second Amended Operating Agreement (the "Operating Agreement"), which provides that it shall be governed by Virginia law. *See* Operating Agreement § 17(A).

14. There were originally eight members of Adcomm, but currently the only members are Plaintiff and Defendants Richard James Rice, Nancy J. D'Angelico, Scott A. Olson, Bernadette W. Wilcox, and Todd K. Tennant.

15. The Operating Agreement cannot be amended without the written consent of members holding at least 70% of the ownership interest in the Company. *See* Operating Agreement § 19(A).

16. The Operating Agreement expressly prohibits any amendments to the Operating Agreement that would adversely affect a member's interests without the consent of the affected member:

> Notwithstanding anything to the contrary in Section 19A hereof, any amendment to this Agreement that would . . . adversely affect the liabilities of a Member, modify the consent and approval rights reserved by the Members or change the method of allocation of Net Income or Net Loss or Gain or Loss from Sale as provided in Section 6 hereof, or the distribution of Net Cash from Operations or Net Proceeds from Sale or Financing as provided in Section 7 or 16B(1) hereof, shall require the approval of the Member affected . . .

Operating Agreement § 19(B).

17. The Operating Agreement unequivocally provides that allocations and distributions of, *inter alia*, net income and gains from any sale of the Company shall be allocated and distributed among Members in proportion to each Member's ownership interest in the Company. *See* Operating Agreement § 6(A) (net income, net loss and credits "shall be allocated among the Members in proportion to their Interest"), 6(B) (gain from sale "shall be allocated among the Members in proportion to their Interest"), 7(A) (net cash from operations "shall be distributed to the Members in proportion to their Interests"), 7(B) (net proceeds from financing "shall be

distributed to the Members in proportion to their Interests"), 7(C) (net proceed from sale "shall be distributed to the Members in proportion to their Interests").

18. The Operating Agreement requires the approval of members owning at least 70% of the Company for certain transactions, including:

> (i) a merger, consolidation or other business combination to which the Company is a party, (ii) the sale of all or a majority of the assets or profit- or revenue-generating capacity of the Company, (iii) a recapitalization of the Company (regardless of the form of transaction by which such recapitalization is accomplished) or (iv) any similar transaction to which the Company is a party.

Operating Agreement § 8(G)(3)(d).

19. The relationship between Plaintiff and Defendants is also governed by a July 1, 2006 Adcomm, LLC Member Agreement (the "Member Agreement").

### A. Following the Sale of Adcomm, Defendants Have the Refused to Distribute the Sale Proceeds to Plaintiff In Proportion to His 20.04% Ownership Interest.

20. On or about June 22, 2022, Adcomm entered into an asset purchase agreement with United Wireless, Inc. pursuant to which Adcomm agreed to sell all of its assets for a purchase price of $17,000,000 and an effective date of August 1, 2022.

21. Under the Operating Agreement, the $17,000,000 proceeds of the sale of the Company were required to be distributed "to the Members in proportion to their Interests." Operating Agreement § 7(C).

22. Notwithstanding their clear contractual obligation to distribute to Plaintiff 20.04% of the $17,000,000 sale proceeds, Defendants have not done so.

5

23.   Instead, Defendants have demanded that Plaintiff sign a document entitled Agreement for Final Distribution of Funds from Adcomm (the "Proposed Distribution Agreement"). Under the Proposed Distribution Agreement, Plaintiff would only receive approximately 10.92% of the sale proceeds, not the 20.04% to which he is entitled. There is no valid basis for this attempted reduction.

### B. Defendants Have Refused to Allocate Plaintiff His Proportional Interest from Transactions Involving Buy-Outs of Former Members.

24.   Defendants have also acted to deprive Plaintiff of his allocation and distribution rights vis-à-vis the Company-funded acquisitions of former members' ownership interests.

25.   Steven Finch was a member of the Company from approximately 2006 to 2012. Upon information and belief, in 2012 the Company purchased Finch's 14.97% ownership interest in the Company. Rather than allocating Finch's interest to members in proportion to their ownership interests, as required by the Operating Agreement, Defendants instead allocated the interests to themselves and allocated none to Plaintiff. Defendants did so following several closed door meetings from which Plaintiff was intentionally excluded. Upon information and belief, the Company only recently completed making payments to Finch's estate,[1] and thus the injury is continuing.

26.   Defendants similarly acted improperly vis-à-vis the buyout of former member Joe Tennant's 4.99% ownership interest. Tennant was a member of the Company from approximately

---

[1] Finch died in 2017.

6

2006 to 2017.[2] Upon information and belief, the Company purchased Tennant's interest and allocated it to five members, and once again excluded Plaintiff.

27. The Operating Agreement authorizes remaining members to purchase the interest of a former member, but the price paid must reflect the fair market value of the former member's interest:

> Subject to all of the provisions of the Members Agreement, in the event of a Buy-Out Event with respect to a Member, the remaining Members shall have the option to purchase that former Member's Interest at a price equal to the fair market value of that former Member's Interest determined as set forth in the Amended Members Agreement, and the Purchase Price shall be paid in accordance with the Amended Members Agreement.

Operating Agreement § 15(G).

28. Upon information and belief, Defendants took no steps to determine the fair market value of the membership interests at issue in the buyouts described above, and thus the purchase price did not reflect the fair market value. Accordingly, Defendants likely acquired the membership interests for less than fair market value, further enriching themselves through the Company's expenditures and at Plaintiff's expense.

### C. Defendants Have Failed to Compensate and Reimburse Plaintiff for Additional Amounts as Required by the Relevant Agreements.

29. The Operating Agreement requires the Company to make monthly payments to Plaintiff in the amount of $13,750 as compensation. Operating Agreement § 9(A) & Ex. C. Plaintiff has not been paid this amount since 2008, however.

---

[2] Tennant died in 2018.

7

30. The Operating Agreement requires the Company to reimburse Members $150 per month for automobile expenses. *See* Operating Agreement § 9(B). The Company has never paid Plaintiff these amounts, despite his clear contractual entitlement to them.

31. The Member Agreement requires each member to have life insurance, and provides that the Company "shall pay every premium." Member Agreement § 4.2. Plaintiff has held a life insurance policy as required by the Member Agreement since 2001, but in 2006 the Company ceased making the monthly premium payments, which were approximately $840.00 per month. Plaintiff continued to make the payments on his own until the policy expired on or about January 1, 2018.

## CLAIM I: Breach of Contract (Against All Defendants)

32. Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

33. The Operating Agreement and the Member Agreement are valid and enforceable contracts between the parties.

34. The Operating Agreement unequivocally provides that allocations and distributions of, *inter alia*, net income and gains from any sale of the Company shall be allocated and distributed among Members in proportion to each Member's ownership interest in the Company.

35. In breach of the Operating Agreement, Defendants have refused to allocate and distribute funds and ownership interests to Plaintiff in proportion to his 20.04% ownership interest.

36. The Member Agreement requires the payment of the monthly premiums for life insurance Members are required to have. Member Agreement § 4.2. In breach of this clear contractual obligation, Defendants have refused to reimburse Plaintiff for his $840.00 per month premium since 2006.

37. The Operating Agreement requires monthly payments to Plaintiff in the amount of $13,750 as compensation. Operating Agreement § 9(A) & Ex. C. In breach of this clear contractual requirement, Defendants have refused to pay Plaintiff this required amount since 2009.

38. The Operating Agreement requires the reimbursement to Members of $150 per month for automobile expenses. *See* Operating Agreement § 9(B). In breach of this clear contractual requirement, Defendants have never paid Plaintiff this monthly amount.

39. Plaintiff has suffered injuries and in damages as a direct result of Defendants' breaches of the Operating Agreement and Member Agreement set forth above.

## CLAIM II:  Conversion (Against All Defendants)

40. Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

41. Plaintiff was entitled to his proportionate allocations and distributions as required by the applicable agreements, and thus has an ownership interest in those allocations and distributions.

42. Defendants have retained allocations and distributions that belong to Plaintiff. Defendants have exercised dominion over these allocations and distributions in a manner that is inconsistent with Plaintiff's valid ownership interest.

43. As a result of Defendants' actions, Plaintiff has suffered damages as a direct result of Defendants' conversion set forth above.

## CLAIM III:  Accounting (Against All Defendants)

44. Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

45. The Operating Agreement requires the Manager to maintain financial and accounting records, and authorizes members to access such records:

9

> The Manager shall maintain and keep . . . complete and accurate books of account, in which shall be entered fully and accurately each and every transaction of the Company . . . Each Member shall at all reasonable times, and upon reasonable notice, have access thereto and the right to inspect and copy those books and records either directly or through a person designated by it, at its own expense.

Operating Agreement § 14(B).

46.     Plaintiff has repeatedly requested access to the Company's books and records, and Defendants have improperly denied Plaintiff's requests.

47.     Given that Plaintiff is aware of multiple instances where Defendants engaged in self-dealing at his expense not only with respect to the sale, but also in regard to other benefits and distributions wrongfully withheld from Plaintiff, it is believed that an accounting will reveal additional improprieties, particularly given the refusal to provide Plaintiff those records to which he is entitled under the Operating Agreement.

48.     Plaintiff demands an accounting to determine whether Defendants have misappropriated additional Company funds beyond that of which he is already aware.

### CLAIM IV:  Constructive Trust (Against All Defendants)

49.     Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

50.     Plaintiff, as a member of Adcomm, has ownership interests of which he has been deprived by Defendants.  These ownership interests include all monies associated with the proceeds received from the sale of Adcomm.

51.     Plaintiff's ownership interests entitle him to allocations and distributions in proportion to his 20.04% interest from the proceeds of the sale, that as of now have not been provided to him, as well as monies for other benefits to which Defendants have excluded him.

52. Defendants have through fraudulent and improper means retained Plaintiff's monies to which he is entitled via his ownership interests in Adcomm.

53. Defendants, upon information and belief, are utilizing, transferring and dispersing the monies to which Plaintiff is entitled and allowing Defendants to retain and use these monies would frustrate the interests of justice.

54. Under the circumstances it would not be equitable or appropriate to permit Defendants to retain property or monies that properly belong to Plaintiff until it is determined what amounts Plaintiff is entitled to via an accounting of all of the Company's expenditures, reallocation of shares, and determination of the amounts that have wrongfully been retained and/or misallocated by Defendants.

55. Plaintiff requests that the Court impose a constructive trust on all Company property and funds pending the outcome of Plaintiff's lawsuit.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court:

1. Enter an order in favor of Plaintiff and against Defendants:

    a. awarding Plaintiff compensatory damages in an amount to be determined at trial of not less than $3,500,000;

    b. awarding Plaintiff exemplary, punitive, and liquidated damages in an amount to be determined at trial in conformance with Va. Code § 8.01-38.1;

    c. imposing a constructive trust on all Company property and funds;

    d. requiring an accounting of the Company's books and records;

    e. awarding Plaintiff pre-judgment and post-judgment interest;

    f. awarding Plaintiff reasonable attorneys' fees and costs incurred herein; and

    g. for such other relief as the Court deems just and proper.

Dated:    October 13, 2022

        OFFIT KURMAN, P.C.

        By:   /s/ John C. Monica, Jr.
        John C. Monica, Jr. (VSB No. 32858)
        8000 Towers Crescent Drive, Suite 1400
        Tysons Corner, Virginia 22182
        Telephone: (703) 745-1857
        Facsimile: (703) 745-1835
        Email: john.monica@offitkurman.com
        *Counsel for Plaintiff Richard Jerry Rice*

        MITCHELL SANDLER LLC
        Ari Karen (*pro hac vice* application forthcoming)
        Christopher L. McCall (*pro hac vice* application forthcoming)
        1120 20th Street N.W., Suite 725
        Washington, D.C. 20036
        Primary email: cmccall@mitchellsandler.com
        Telephone: (202) 886-5292
        *Counsel for Plaintiff Richard Jerry Rice*